## HAGOP HAGOPIAN
### vs.
## JOHN SAAD, ET AL.

Superior Court　　　Windham County　　　File #70377.

Present: Hon. PATRICK B. O'SULLIVAN, Judge.

Telley E. Babcock,　　　　　Attorney for the Plaintiff.

Harry E. Back;
Samuel B. Harvey,　　　　　Attorneys for the Defendants.

**MEMORANDUM FILED JUNE 4, 1937.**  124 Conn. 256

O'SULLIVAN, J. On July 7, 1904, Albert Whipple owned a farm located in Canterbury and Scotland, which, on that date, he conveyed to Stephen Missir. (Exhibit 2). The farm consisted of two large tracts of land, one lying north and the other south of an old road.

Missir conveyed an undivided one-half interest in the entire farm to Asdoor (also known as James or Jimmie) Mardirosian on November 5, 1904. (Exhibit 3) On March 17, 1908, Asdoor conveyed one-half of his interest to Varten Mardirosian. (Exhibit 4)

On November 19, 1909, Varten conveyed his interest to himself, Marderos Mardirosian, and Anna G. Mardirosian.

(Exhibit 5)

On December 5, 1910, Missir conveyed his remaining one-half interest to Elizabeth Aprahamian, (Exhibit 6), and she, on May 2, 1911, conveyed her interest to Marderos Mardirosian and Anna G. Mardirosian. (Exhibit 7)

By this time, Marderos owned an undivided one-third interest in the entire farm; Anna, a one-third; Varten, a one-twelfth; and Asdoor, a one-fourth. The interest of each was one in fee simple.

On April 2, 1912, the four tenants in common executed the following instrument, (Exhibit 8), which is set forth in full save for the signatures, the names of the witnesses and the acknowledgment:

"An article of agreement between Jimmie Mardurosian and Vartan Mardurosian & Mardiros and Anna G. Mardirosian to the division of their farm, and the buildings thereon.

"The Ell portion of the house is to belong to Jimmie Mardurosian. Vartan and Mardirosa Mardirosian and Anna G. Mardirosian, their families to have the privilege of using the staircase in said Ell. Vartan Mardurosian & Mardiros and Anna G. Mardirosian are to have upright portion of the house.

"The well both parties are to have equal rights to, the water to be used only for the family's and to water the stock if desired. The space of two feet on each of the four sides of the well to be considered as equal property of both.

"The chimney being situated in the Ell, both parties agree to share equally the expense should said chimney need repairing.

"The house lot Jimmie Mardurosian owns 12 paces due north from the N.E. corner of the upright portion of the house, to stone bound, from said bound Easterly 10 paces to stone wall, thence Northerly 11 paces to corner of said wall, thence Easterly 41 paces to corner of wall, thence South to highway, Westerly along line of highway to west end of Ell or the first mentioned bound.

"Vartan Mardurosian and Mardiros and Anna Mardirosian to have the larger barn with land adjacent thereto, from Apple tree in highway due South 37 paces to stone bound, thence Easterly 25 paces to stone bound, thence Northerly to stone bound four ft. from N.E. corner of large barn. (The fence

not to be less than 5 feet from cow stable door) thence N.W. 4 paces to stone bound, thence North 10 paces to stone 6 paces N.W. of small barn.

"The smaller barn is to belong to Jimmie Mardurosian.

"The portion of the farm blonging to Jimmie Mardurosian is bounded on the North by the highway, on the West by the Scotland & Canterbury town bounds, on the South by lands of Henry Pringle & Thomas Robbins heirs, on the East by the Hampton and Westminster highway.

"Jimmie Mardurosian grants to Vartan Mardurosian and Mardiros and Anna G. Mardirosian a right of way across his land from the highway South to lands of Vartan & Madros and Anna G. Mardurosian situated west of the Scotland & Canterbury line.

"Vartan Mardiros Mardirosian & Anna G. Mardirosian grant Jimmie the right to plow the same land that he did last year & crop the same, for one year.

"Jimmie Mardurosian & Vartan & Mardiros & Anna G. Mardirosian agree to use the pasture and repair the fences jointly for two years.

"In witness whereof etc."

What effect the foregoing (Exhibit 8) had with respect to the title to the farm will be commented upon after finishing a recital of the events occurring after its execution.

On July 25, 1916, Asdoor (Jimmie) quit-claimed to the plaintiff his interest in the two parcels of land described in the first count of the complaint, these parcels being the same as those which Exhibit 8 states "belong" to the grantor. The larger of these tracts consisted partly of woodland upon which the defendants entered at various times after December 1, 1936 and cut timber and cord wood from time to time. This action has been brought to recover damages for this alleged trespass and to enjoin the defendants from further entrance for such purposes upon the land in question.

To comprehend the reason which prompted the defendants to engage in these activities, it becomes necessary to refer to certain other deeds, for the defendants claim to be the owners of the land through the following alleged chain of title.

On January 10, 1918, Vartan and Marderos Mardirosian

conveyed to Anna G. Mardirosian their interest in the entire farm, (Exhibit A), the description of the land not being limited to that which Exhibit 8 stated "belonged" to these grantors.

On April 10, 1923, Charles Mardirosian (whoever he may be, although that is immaterial to this case) and Anna Mardirosian conveyed to Asdoor (Jimmie) by warranty deed (Exhibit C) the entire farm, the description again not being limited to the parcel which Exhibit 8 states "belongs" to Anna. The conveyance, however, does provide that "this deed is to cover just which interest we have in this farm".

On June 25, 1929, Asdoor deeded to William McNichol (Exhibit E); on June 7, 1932, McNichol deeded to Edward Baker (Exhibit F), and on October 29, 1936, Baker conveyed to the defendants. In these last three deeds, the description of the lands conveyed was that of the entire farm.

All of the deeds referred to in the foregoing recital were duly recorded in the land records of the town of Canterbury.

Exhibit 8 is the important and vital instrument in this case. The defendants claim it is a nullity so far as being effective to convey title, first, because no operative words of conveyance are used, and secondly, because if otherwise a good deed, it is valueless in its purpose inasmuch as a deed by one tenant in common of a portion of the common estate is void where such portion is described by metes and bounds.

It is quite obvious that Exhibit 8 was executed to carry out the intention of the parties to divide the farm. The language of the instrument is legally crude but the purpose of the parties is as apparent as though drafted by a master scrivener, and the use of the words "belong" and "blonging" are ample to provide the necessary words of conveyance. "A deed must contain in legal and proper order sufficient words to evidence the agreement and intent of the parties to make is obligatory. There is, however, no particular form absolutely necessary to constitute a deed; nor need all the parts which commonly compose a deed be used, provided there are sufficient words to express with clearness and certainty the meaning of the parties." **1 Swift's Digest 120; 18 C.J. 178.**

The defendants' further claim that one co-tenant may not convey by metes and bounds a portion of the co-tenancy applies only when a stranger is the would-be grantee. **Griswold**

vs. Johnson 5 Conn. 363. The law has always recognized the right of co-tenants to partition their lands voluntarily. **Tiffany on Real Property, sec. 203.**

The defendants further urge that Exhibit 8 creates no estate of inheritance as it is devoid of the use of the word "heirs". They insist that the greatest estate which this instrument could possibly create is a life estate, and hence they conclude that the conveyance from Asdoor to this plaintiff was limited to such an estate, and finally, they argue, as Asdoor died before the timber was cut, the plaintiff has no grievance as his interest in the land died with his grantor.

The defendants forget, however, that prior to the execution of Exhibit 8, Asdoor's estate was one in fee simple. The partition of the farm did not destroy this estate. Instead of remaining a co-tenant of land held in fee simple, he became, by virtue of the agreement of partition, the sole owner in fee simple of a portion of the lands. Words of inheritance were not necessary to continue the quality of his estate.

Accordingly, it follows that by his deed Asdoor conveyed to the plaintiff the fee in the lands described in the first count. The defendants acted unlawfully in cutting the timber on these lands.

The damages are found to be $309. for which judgment may enter against the defendants.

In view of the statement of counsel, no decision need be reached on the third count.